UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAMON VINCENT,

                 Petitioner,

                 -against-

JOSEPH SMITH,

                 Respondent.
------------------------------------------------------------X

**REPORT & RECOMMENDATION**

05 Civ. 7852 (DAB)(KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Damon Vincent ("Vincent"), proceeding pro se, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petitioner alleges his confinement by New York State is unlawful because: (1) New York State lacks subject matter jurisdiction over kidnapping perpetrated across state lines because the Federal Kidnapping Act ("Act"), as amended, 18 U.S.C. § 1201, preempts any and all state kidnapping statutes as applied to interstate kidnapping; (2) New York Criminal Procedure Law ("CPL") § 20.20, which provides the jurisdictional basis for the State to prosecute criminal offenses committed in the state, is partially unconstitutional because it is preempted with respect to interstate kidnapping; (3) New York State does not have power, under the Tenth Amendment, to exercise jurisdiction over interstate kidnapping because the federal government retains exclusive authority over interstate commerce; and (4) the lack of jurisdiction to prosecute Vincent in New York State violates his right to due process under the Fifth and Fourteenth Amendments. The respondent opposes the petition, contending: (1) New

1

York State and the federal government are separate sovereigns, thus each has the power to prosecute the petitioner for kidnapping that crosses state lines; and (2) under the doctrine of dual sovereignty, New York State retains authority, via geographical jurisdiction, to prosecute kidnapping perpetrators who commit elements of their offense within and without its borders.

## II. BACKGROUND

On February 11, 2001, Vincent and two accomplices ordered Christian Filpo ("Filpo") into a van at gunpoint, on West 146th Street and Broadway, in Manhattan. Filpo was bound with duct tape and blindfolded. He was transported to an apartment in Pennsylvania. Filpo's abductors attempted to compel a Filpo relative either to pay ransom money or to supply cocaine to them for Filpo's safe return. While in Pennsylvania, Vincent and his accomplices made ransom calls using Filpo's cellular telephone, assaulted him physically and robbed him of jewelry. On February 13, 2001, Vincent and his accomplices returned Filpo to New York, where they were subsequently arrested.

Vincent was indicted by a New York County grand jury. It charged him with two counts of first-degree kidnapping, one count of second-degree kidnapping, first-degree robbery, and second-degree criminal possession of a weapon. On January 24, 2002, while a pre-trial suppression hearing was underway, Vincent elected to plead guilty to one count of second-degree kidnapping, in full satisfaction of all charges in the indictment and an unrelated kidnapping charge. The plea was made in exchange for a promised determinate sentence of eighteen years in prison, post-release supervision, and his consent to the entry of an order of protection directing him to stay away from the witnesses in the case.

On April 10, 2002, at Vincent's sentencing proceeding, Vincent informed the court that he had pleaded guilty because "sufficient evidence to prove his guilt" existed, and not because he was actually guilty. According to Vincent, several of his constitutional rights had been violated. He explained that: (a) he had been denied a speedy trial; (b) the proceedings in the trial court had been infected by the biased social and political beliefs of the judge, the prosecution, and his attorney; and (c) he had not been advised that a co-defendant was cooperating with the prosecution against him. The court rejected all Vincent's claims respecting alleged constitutional violations. The court advised Vincent his constitutional rights had been protected. Thereafter, the court imposed the promised sentence.

Vincent appealed from the judgment of conviction. His appellate counsel asserted the petitioner's kidnapping sentence was excessive, in comparison to sentences typically imposed in similar circumstances. Vincent filed a supplemental appellate brief, pro se. In that brief, he argued that New York's kidnapping law is invalid, with respect to interstate kidnapping, because it impinges on the exclusive authority, reserved to Congress, to regulate interstate commerce. Vincent argued further that the Act, which Congress enacted pursuant to its authority to regulate interstate commerce, preempted state kidnapping statutes, as applied to interstate kidnapping, by assuming jurisdiction over the entire field of interstate kidnapping. Therefore, according to Vincent, New York State could not exercise subject matter jurisdiction and geographical jurisdiction over the interstate kidnapping involved in his case.

The New York State Supreme Court, Appellate Division, First Department, affirmed Vincent's conviction unanimously. It found no basis existed for reducing Vincent's sentence.

3

The Appellate Division also rejected the claims contained in Vincent's pro se supplemental appellate brief because the claims were unpreserved for appellate review and without merit. See People v. Vincent, 15 A.D.3d 311, 789 N.Y.S.2d 883 (App. Div. 1st Dep't 2005). Thereafter, the New York Court of Appeals denied Vincent leave to appeal to that court. See People v. Vincent, 4 N.Y.3d 891, 798 N.Y.S.2d 737 (2005).

On October 23, 2003, Vincent moved to vacate the judgment of conviction pursuant to CPL § 440.10. Vincent alleged that: (1) New York State lacked subject matter jurisdiction over the interstate kidnapping charge because it is a federal crime solely; (2) double jeopardy would bar a future kidnapping prosecution of him in federal court arising out of Filpo's abduction; (3) he was coerced to plead guilty by his trial counsel, who had colluded with the prosecution; (4) a conflict of interest compromised his trial counsel's performance; and (5) he was denied his Sixth Amendment right to a speedy trial.

The trial court determined Vincent's speedy trial issue was not reviewable, because it was procedurally barred. Moreover, the court concluded any argument that Vincent's trial counsel rendered ineffective assistance to him, by failing to preserve this claim for appeal, was meritless. In addition, the court held that, while federal courts may exercise jurisdiction over an interstate kidnapping, under 18 U.S.C. § 1201(a)(1),[1] their jurisdiction is not exclusive; therefore, the crime may be prosecuted in any state where an element of the kidnapping offense occurs. In Vincent's

---

[1] 18 U.S.C. § 1201(a)(1) prohibits, in pertinent part, the "unlawful[] seiz[ing], confin[ing], inveigl[ing], decoy[ing], kidnap[ping], abduct[ing], or carr[ying] away and hold[ing] for ransom or reward or otherwise any person. . . when. . . the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense. . . ." 18 U.S.C. § 1201(a)(1).

4

case, evidence that at least some elements of the crime were committed in New York existed. Therefore, the trial court concluded New York State had jurisdiction over the offense. Vincent's double jeopardy claim was also rejected by the court, which noted that Vincent had been aware of the terms under which he pleaded guilty and had acknowledged, in open court, the plea was made of his own free will.

Vincent sought leave to appeal from the trial court's decision and order on his CPL § 440.10 motion. On October 7, 2004, the Appellate Division denied Vincent's application for leave to appeal; it concluded no question of law or fact was presented by Vincent that should be reviewed. This petition for a writ of habeas corpus followed.

## III. DISCUSSION

*Standard of Review*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. See 28 U.S.C. § 2254(d). In a circumstance where a state court has previously adjudicated the petitioner's federal-law claim on the merits, AEDPA requires that federal courts employ a "more deferential" review of the factual findings and legal conclusions made and reached by the state court. Jenkins v. Artuz, 294 F.3d 284, 286 (2d Cir. 2002).

Prior to the passage of AEDPA, courts applied a less deferential de novo standard of review to applications for habeas corpus relief. See Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2006). Recently, the Second Circuit Court of Appeals and courts within the circuit have begun to review applications for the writ de novo, when a petitioner's claim(s) would "fail under the more forgiving pre-AEDPA standards of review." Id. at 198. When a petitioner's claim would fail under this less deferential standard, it is not necessary to determine whether an application of AEDPA is warranted. See Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001).

In the instant case, the Court has determined to review Vincent's application for habeas corpus relief under the pre-AEDPA, de novo standard because his claims are plainly meritless, under either standard.

*Preemption of New York State's Kidnapping Statute*

Vincent maintains his prosecution under New York Penal Law ("PL") § 135.20[2] was unconstitutional because the Act preempts state kidnapping laws, as applied to interstate kidnappings, and precludes New York State from exercising subject matter jurisdiction over the offense for which he was convicted. The respondent contends that, under the doctrine of dual sovereignty, states and the federal government derive power from different sources; accordingly, the States and the federal government may prosecute an individual for the same criminal act.

Federal preemption derives from the Supremacy Clause, which provides that federal law is the "supreme [l]aw of the [l]and . . . any [t]hing in the Constitution or [l]aws of any State to the

---

[2]PL § 135.20 defines second-degree kidnapping as the abduction of another person, and PL § 135.00 defines "abduct" as "restrain[ing] a person with intent to prevent his liberation by. . . using or threatening to use deadly physical force."

6

[c]ontrary notwithstanding." U.S. CONST. art. VI, cl. 2. Consequently, Congress may enact federal legislation that preempts state law, even in areas that are traditionally regulated by the States. See New York v. United States, 505 U.S. 144, 178, 112 S. Ct. 2408, 2429 (1992). Generally, a presumption against finding preemption of state law exists with respect to those areas that traditionally fall within the States' police power, see California v. ARC America Corp., 490 U.S. 93, 101, 109 S. Ct. 1661, 1665 (1989), such as criminal law, see United States v. Morrison, 529 U.S. 598, 617-618, 120 S. Ct. 1740, 1754 (2000),

When determining whether Congress intended to preempt a state law, the Supreme Court has held consistently that courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest intent of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947). A court must examine the structure and substance of both the state and federal laws to determine whether Congress, explicitly or implicitly, intended to exclude the States from exercising jurisdiction over a particular matter. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992). Congress makes clear that a federal statute preempts existing or future state laws on a subject "by so stating in express terms." Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203, 103 S. Ct. 1713, 1722 (1983). To determine whether such is the case, the plain wording of the federal statute must be examined, which will contain "the best evidence of Congress' pre-emptive intent." In re WTC Disaster Site, 414 F.3d 352, 372 (2d. Cir. 2005) (quoting CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737 [1993]).

7

A state law may be preempted implicitly if the federal law "so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it,'" Cipollone, 505 U.S. at 516, 112 S. Ct. at 2617 (quoting Fidelity Fed. Sav. & Loan Ass. v. De la Cuesta, 458 U.S. 141, 153, 102 S. Ct. 3014, 3022 [1982]). Preemption may also be implied if "the state law stands as an obstacle" to implementing the federal law, Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S. Ct. 615, 621 (1984), or if the state law is entirely incompatible with the federal law such that compliance with both laws is impossible. See California, 490 U.S. at 100, 109 S. Ct. at 1665 (citing Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S. Ct. 1210, 1217-18 [1963]).

Vincent does not contend the Act contains an express provision preempting New York State from enacting and enforcing a law proscribing kidnapping. He claims the Act preempts implicitly all state-kidnapping laws that apply to kidnappings perpetrated across state lines, and further, that any claim by the State of concurrent jurisdiction over interstate kidnapping is rebutted by implication from relevant legislative history. For the reasons discussed below, Vincent is wrong.

Although Congress has made interstate kidnapping a federal offense, that does not mean it intended for the federal government to occupy the field of interstate kidnapping solely and to preclude the States from prosecuting those who kidnap and bring their victims across state lines. The Supreme Court has explained that an intent to occupy a field of law may be inferred by "a scheme of federal regulation. . . so pervasive" that it precludes the possibility that Congress meant for the States to also legislate on the issue, or "where an Act of Congress touches a field in

8

which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." English v. General Elec. Co., 496 U.S. 72, 79, 110 S. Ct. 2270, 2275 (1990) (quoting Rice, 331 U.S. at 230, 67 S. Ct. at 1152).

In Chatwin v. United States, 326 U.S. 455, 66 S. Ct. 233 (1946), the Supreme Court noted that when the Act was passed, kidnapping across state lines was rampant, as this was a way for kidnappers to escape state law enforcement officials and subsequent prosecution. See Chatwin, 326 U.S. at 462, 66 S. Ct. at 236-237. Congress enacted the statute "to assist the states in stamping out this growing and sinister menace of kidnaping [sic]," recognizing that "only the federal government had the power to disregard" the state lines that limited state law enforcement officials from pursuing the abductors. Id. at 463, 66 S. Ct. at 237. Thus, the purpose of the Act was to supplement state-kidnapping laws and authorize the use of federal resources to apprehend and prosecute otherwise fugitive kidnappers, not to strip the States of their authority to do so. Congress declined to address interstate kidnapping by creating a new federal law enforcement agency dedicated exclusively to investigating and apprehending kidnappers, which refutes further the notion that Congress intended the federal government to occupy the field of interstate kidnapping exclusively. Therefore, the Act's mere existence does not mean that investigating and apprehending those who engage in interstate kidnapping is a field within the sole province of the federal government.

Vincent also makes citation to the Congressional Record's account of the legislative debate over the first "Anti-Kidnapping" bill and claims that, prior to passing this precursor to what is now the Act, Congress debated whether to vest sole jurisdiction over interstate

kidnapping with the federal government. The Court has reviewed excerpts of the Congressional Record to which Vincent makes citation and finds that he misapprehends the substance of the debate. Congress was not debating whether to vest the federal government with exclusive jurisdiction over interstate kidnapping. Rather, Congress was debating the scope of authority state law enforcement officials should be permitted to exercise when apprehending accused kidnappers for the purpose of surrendering them to federal authorities for prosecution, under the new federal legislation.

Furthermore, PL § 135.20 is no obstacle to the Act's objective because, as mentioned above, the objective of the Act is to supplement state law enforcement efforts because the States might be unable to apprehend and prosecute those who engage in interstate kidnapping. The purpose of the Act is not to vest sole authority over interstate kidnapping with the federal government or to revoke States' authority to prosecute such kidnappers. In the case at bar, New York State was able to apprehend a kidnapper, who transported his victim across state lines, without the aid of the federal government because the kidnapper returned to New York State. Therefore, no need existed for the Act to be invoked.

In addition, PL § 135.20 does not bar successive federal and state prosecutions for a single criminal act because, under the doctrine of dual sovereignty, the federal government and the state of New York may prosecute a person for a single criminal act, since each is a sovereign entity that derives its power from a different source. See Heath v. Alabama, 474 U.S. 82, 88-89, 106 S. Ct. 433, 437-438 (1985).

Moreover, no inherent conflict exists between the Act and PL § 135.20 because they are

not mutually exclusive; compliance with both statutes is possible. See Silkwood, 464 U.S. at 257, 104 S. Ct. 626. PL § 135.20 and the Act are different offenses; their elements are not the same, although both criminalize the same underlying conduct. PL § 135.20 defines the crime of second-degree kidnapping as the abduction of another person, while criminal culpability under the Act requires proof of additional elements: a ransom and the transportation of a victim across state lines. See 18 U.S.C. § 1201(a). Therefore, the statutes may coexist and be enforced separately or concurrently by the respective sovereigns, without conflict.

Since the Act does not preempt state kidnapping statutes, as applied to interstate kidnapping, the Court finds that PL § 135.20 is not preempted by the Act, and New York State had the authority to prosecute Vincent for a kidnapping that began in its jurisdiction and continued across state lines because the elements of the relevant state-kidnapping statute, PL § 135.20, were met.

*Commerce Clause Claim*

Vincent contends that, because Congress enacted the Act pursuant to its exclusive authority to regulate interstate commerce, CPL § 20.20, as applied to interstate kidnapping, is invalid because it infringes on interstate commerce. For its part, the respondent maintains that, because New York has retained the authority to prosecute criminal offenses when a person commits an element of a crime in its jurisdiction, then, a prosecution for interstate kidnapping, when that offense originates in New York State, is permissible under the doctrine of dual sovereignty, and CPL § 20.20 is valid.

Vincent's argument, that New York State infringes on interstate commerce when it

prosecutes a person for interstate kidnapping in the circumstance described above, is flawed. Vincent was not prosecuted by New York State for kidnapping across state lines for ransom, as provided for in 18 U.S.C. § 1201(a). He was prosecuted under PL § 135.20 for abducting Filpo in Manhattan. Vincent and his accomplices completed every element of PL § 135.20 before leaving New York State.

Although Vincent contends Congress enacted the Act pursuant to its power to regulate interstate commerce, he is wrong when he asserts that a state statute authorizing the prosecution of a kidnapping perpetrated across state lines is invalid because it also affects interstate commerce. Any affect the statute has on interstate commerce may best be described as slight and incidental. Vincent ignores the fact that the States have a legitimate interest in and constitutional authority to define, prevent and punish crime, much of which may involve conduct that crosses state lines. See Huron Portland Cement Co. v. City of Detroit, Mich., 362 U.S. 440, 443-444, 80 S. Ct. 813, 816 (1960) (noting that the Commerce Clause was "never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." [quoting Sherlock v. Alling, 93 U.S. 99, 103 (1876)]).

As a result of New York State's authority to enact statutes to ensure that those who are within its jurisdiction are not made the victims of crime, even when doing so has a scant affect on interstate commerce and, furthermore, inasmuch as the doctrine of dual sovereignty allows the State to enact such statutes, Vincent's claim, that CPL § 20.20, as applied to interstate kidnappings is invalid, lacks merit.

12

*Geographical Jurisdiction and Due Process Claims*

Vincent claims that CPL § 20.20 is partially unconstitutional because it is preempted by the federal law respecting interstate kidnapping. However, for the reasons discussed above, that will not be repeated here, the Act does not preempt state laws, as applied to kidnapping perpetrated across state lines. Therefore, this claim fails. In addition, since Vincent has failed to establish that PL § 135.20 is preempted by the Act, his claim, that he was deprived of due process because New York State did not have subject matter jurisdiction over the crime for which he was convicted, is baseless.

## IV. RECOMMENDATION

For the reasons set forth above, the petitioner's application for a writ of habeas corpus should be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl St., Room 2510, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S.

140 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Candair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      July 30, 2007

Respectfully submitted,

*/s/ Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Damon Vincent
Alyson J. Gill, Esq.